17553.  WESTERN & ATLANTIC RAILROAD *v.*
TOWNSEND, administratrix.

1. Damages recoverable under the Federal employer's liability act for the homicide of an employee may include, in addition to the value of his earnings in his employment, the proved monetary value of services for his family of a kind which he was rendering, such as domestic work in his household and the teaching of a minor child. An amendment adding to the petition in this case allegations as to such services and their value was properly allowed.

2. A witness may swear to his opinion or belief as to the value of services rendered, especially where he gives the facts upon which his testimony is based.

3. The charge that "the damages are such as flow from the deprivation of pecuniary benefits—whatever benefits might reasonably have arisen if the decedent had not died from his injuries," was not subject to the exception taken.

4. It is not cause for a new trial that the court admitted testimony as to the amount of taxes paid by the decedent, offered as tending to prove his earnings by showing his income and expenditures.

5. The court did not err in charging in substance that if both the decedent and the defendant were negligent, the decedent's negligence would not defeat a recovery, but in such event the damages should be diminished by the jury in proportion to the amount of negligence attributable to him.

6. Under the Federal safety-appliance act, when it is proved that the injury for which the plaintiff seeks to recover was the proximate result of a defect in the appliance complained of, the plaintiff is entitled to recover full damages, irrespective of contributory negligence on the part of the injured employee and without proof of negligence on the part of the defendant.

7. The court, after charging as to the discount to be made in reduction of future compensation to present value, based on the rate of interest obtainable for the money, did not, for the reason alleged, err in charging to the effect that the award of compensation should be upon a basis that

---

Appeal and Error, 4 C. J. p. 969, n. 56.

Death, 17 C. J. p. 1297, n. 93; p. 1309, n. 32; p. 1314, n. 75; p. 1318, n. 30; p. 1326, n. 3; p. 1328, n. 9; p. 1333, n. 82; p. 1334, n. 89, 95; p. 1358, n. 82.

Evidence, 22 C. J. p. 551, n. 50, 52; p. 593, n. 26, 27.

Master and Servant, 39 C. J. p. 385, n. 52; p. 386, n. 55; p. 820, n. 60, 61; p. 821, n. 62; p. 822, n. 84; p. 823, n.86; p. 1072, n. 65; p. 1249, n. 86.

Negligence, 29 Cyc. p. 510, n. 69.

does not call upon the beneficiaries to exercise financial skill to obtain the highest legal rate of interest.

8. The evidence supported the verdict, and for no reason assigned can the verdict be disturbed.

DECIDED OCTOBER 29, 1926.

Damages; from Fulton superior court—Judge Pomeroy. June 22, 1926.

Application for certiorari was denied by the Supreme Court.

This was an action for damages, brought in two counts, by the administratrix of a freight-conductor who was killed by the derailment of his train while engaged in interstate commerce. In the first count liability was predicated on a violation of the safety-appliance act, it being alleged that a defective air-brake caused the brake-shoe to stick, heating a wheel, and thereby causing its collapse, with the consequent derailment of the train. The second count was predicated upon negligence on the part of the defendant, alleging failure to inspect and repair the brakes, and misconduct on the part of the engine-crew in failing to stop the train for a distance of a mile after the defective car had become derailed, in spite of repeated signals, and while in violation of the company's rule which required the engineer and the fireman to look back at frequent intervals. The jury found in favor of the plaintiff, and exception was taken by the defendant to the refusal to grant a new trial.

*Tye, Peeples & Tye,* for plaintiff in error.

*Reuben R. & Lowry Arnold,* contra.

JENKINS, P. J. (After stating the foregoing facts.)

1. The court did not err in allowing the amendment to the petition, setting up that the decedent left surviving him the plaintiff (his wife) and a daughter about eight years of age, who were dependent upon him and received his earnings, and that the action was brought by the plaintiff, as administratrix, for the benefit of herself as the widow and of the minor child, the amendment further alleging that in addition to the salary of the decedent, amounting to the sum of $250 per month, he performed domestic services for the benefit of his wife and daughter, amounting to the value of $50 per month, and rendered services of especial value to his daughter in instructing her in her lessons, of the added value of $25 per month. While it is true that under the Federal employer's liability act the plaintiff is entitled to recover only such

damages as would represent the pecuniary value of the contributions which the decedent would probably have made for the benefit of his wife and daughter had he not been killed, and it is not permissible to recover damages for the sentimental value of the society and companionship growing out of the relationship which existed between the decedent and his family, since the loss thus occasioned is not capable of being measured by any material standard (Mich. Cen. R. Co. *v.* Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. ed. 417, Ann. Cas. 1914C, 176), it is nevertheless true that a recovery is permissible for any lost contribution which is capable of pecuniary measurement; and in thus assessing the damages accruing to the widow and child for the death of the husband and father, it is competent to include the proved monetary value of any domestic services which the husband would have continued to render for the benefit of his family, and such proved monetary value of the services rendered to the child in bestowing educational training.

2. "Where the question under examination, and to be decided by the jury, is one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor." Civil Code (1910), § 5874. Testimony as to the value of services rendered is in the nature of opinion evidence. See Civil Code, § 5875. Thus, in an action for damages on account of the loss of services rendered, while it would not be permissible to prove by a mere general statement the amount of the damage sued for, still, the value of the services testified to being in its nature a matter of opinion, any witness may swear to his opinion or belief as to the value of such services, especially where the witness goes into full detail as to the facts upon which his opinion is based. *Jennings* v. *Stripling,* 127 *Ga.* 778 (56 S. E. 1026); *Central &c. Ry. Co.* v. *Hartley,* 25 *Ga. App.* 110 (4) (103 S. E. 259), and cit. Accordingly, the first ground of the amendment to the motion for a new trial is without merit.

3. There was evidence sustaining the allegations set forth in the amendment referred to in the first division of the decision; consequently the exception taken to the charge upon this phase of the case, based upon the ground that it was without evidence to authorize it, is without merit; likewise, the refusal of the court to charge, as requested, that the jury, for the reason that there

was no evidence to support it, would not be authorized to base any finding of damages upon the allegations of the amendment to the petition as to the services rendered to the daughter of the decedent, was not error. The other ground of complaint to the excerpt from the charge actually given upon this phase of the case, which is that the court charged that "the damages are such as flow from the deprivation of pecuniary benefits—whatever benefits might reasonably have arisen if the decedent had not died from his injuries," movant contending that the pecuniary benefits allowable in such a case could only be such as the widow and child were probably deprived of by the death of the decedent, is without merit. The reference to such benefits as might reasonably have arisen is equivalent to "such benefits as the jury might find the widow and child were probably deprived of."

4. The testimony as to the amount of taxes paid by the decedent was admitted in evidence, in an effort by the plaintiff to prove the earnings of the decedent by showing his income and expenditures, and was properly admitted for that purpose. But even if not properly admitted, its admission was not such harmful error as would authorize a new trial.

5. The court charged the jury in substance that if both the decedent and the defendant were negligent, the negligence of the decedent would not entirely defeat a recovery, but in such event the damages would be diminished by the jury in proportion to the amount of negligence attributable to him. This excerpt from the charge is substantially in the language of the Federal statute. Exception is taken thereto on the ground that it does not embody the construction of the statute as given by the Federal decisions, which are controlling in an action brought under the Federal employer's liability act. This portion of the statute has been construed by the Federal courts to mean that in such a case the plaintiff shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the employer bears to the entire negligence attributable to both. Norfolk & Western Ry. Co. *v.* Earnest, 229 U. S. 114 (33 S. Ct. 654, 57 L. ed. 1096, Ann. Cas. 1914C, 172). This court, in *Central of Ga. Ry. Co.* v. *Lindsey,* 28 *Ga. App.* 198 (6) (110 S. E. 636), construed the rule under the Federal decisions, as just stated, as being merely an amplification of the

statute rule, and in the *Lindsey* case it was said that under the
Federal decisions a charge giving the rule in terms substantially
identical with the statute had been approved by the Federal courts.
See also *Southern Ry. Co.* v. *Wessinger,* 32 *Ga. App.* 556 (124
S. E. 100) ; Norfolk & Western Ry. Co. *v.* Earnest, supra.; Illinois
Central R. Co. *v.* Skaggs, 240 U. S. 73 (36 S. Ct. 249, 60 L. ed.
528). Moreover, in the instant case, in another portion of the
charge, the rule as amplified by the Federal decisions was in
terms given in charge, as follows.: "The court further instructs
you, that, unless you find that the death of the husband of plain-
tiff was due to a violation of the safety-appliance act in some par-
ticular specified in the petition, and that such violation was the
proximate cause of his death, you would have the right to con-
sider the contributory negligence of plaintiff's husband, if there was
such negligence, on the question of the amount of damages allow-
able in this case; and in this connection the court charges you,
that, if the plaintiff's husband and the defendant were both negli-
gent in matters proximately causing or contributing to his death,
and if the negligence of the defendant did not involve a violation
of the safety-appliance act as above explained to you, the plain-
tiff would not be entitled to recover full damages, but only such
a proportionate amount, bearing the same relation to the full
amount as the negligence attributable to the defendant bears to
the entire negligence attributable to both the defendant and the
decedent." Accordingly, the exception taken to this excerpt from
the charge is without merit.

6. Under the provisions of the Federal safety-appliance act,
upon proof being made that the injury proximately resulted from
a defect in the appliance complained of, the plaintiff is entitled to
recover full damages, irrespective of any contributory negligence
on the part of the employee, and without proof of negligence on
the part of the defendant. Texas & Pacific Ry. Co. *v.* Rigsby, 241
U. S. 33 (36 S. Ct. 482, 60 L. ed. 874) ; Spokane & Inland Em-
pire R. Co. *v.* Campbell, 241 U. S. 497 (36 S. Ct. 683, 60 L. ed.
1125) ; Great Northern R. Co. *v.* Otos, 239 U. S. 349 (36 S. Ct.
124, 60 L. ed. 322) ; L. & N. R. Co. *v.* Layton, 243 U. S. 617 (37
S. Ct. 456, 61 L. ed. 93) ; Minneapolis & St. Louis R. Co. *v.*
Gotschall, 244 U. S. 66 (37 S. Ct. 598, 61 L. ed. 995). In the
instant case the proved facts and circumstances were such as

would authorize the inference by the jury that the air-brake was defective when the trip was begun, as well as at the time of the accident, and that such defect was the proximate cause of the derailment. Accordingly, the excerpts from the charge complained of, in which these principles were fairly and correctly set forth as governing the law applicable to the first count of the petition, were without error; nor were they objectionable as being argumentative in character.

7. The court charged the jury in part as follows: "When you decide upon the amount of pecuniary benefit which the decedent's life would have been to his wife, and also to his child, under the conditions hereinbefore stated, it would not be proper to give the gross amount of those benefits in the verdict which you render in the case, because, inasmuch as the same is paid down all in cash, the amount would have to be reduced to its present cash value. You are instructed that the present cash value of future benefits of which the beneficiaries may have been deprived by the death of the decedent, making adequate allowance, according to the circumstances, for the earning power of money, is the proper measure of damages in an action of this character. In determining what rate of interest you should find that money will bring, and hence what rate of discount shall be used by you in reducing this amount to its present value, you would consider all the facts and circumstances of the case. Local conditions are not to be disregarded, nor should the discount necessarily be at what is commonly called the legal rate of interest. It may be that such rates are not obtainable upon investments upon safe securities without the exercise of financial experience and skill. The compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill. It is a matter for you to decide as to what the earning power of money at this place and this time on safe investments would be. You are authorized to make the calculation, reducing the sum found by you to its present value by any proper method of calculation. In other words, whatever the annual loss by these beneficiaries might be throughout the expectancy of the decedent, in your opinion, or throughout such part of his expectancy as you decide that these beneficiaries would receive annual benefits, the same would be reduced to its present cash value upon the rate of interest which you fix as reasonable and right under

the circumstances of the case, as I have just explained to you."
Exception is taken to the following excerpt from this portion of
the charge: "It may be that such rates are not obtainable upon
investments upon safe securities without the exercise of financial
experience and skill. The compensation should be awarded upon
a basis that does not call upon the beneficiaries to exercise such
skill;" the objections of the defendant being that the charge was
error in that it is contended that the quoted excerpt left it to the
jury to reduce the gross amount of damage to its present value,
using a rate of discount such as could be realized by the bene-
ficiaries without the exercise of any degree of financial skill.

The excerpt from the charge was manifestly based upon what
was said in the opinion of the court in the case of Chesapeake &
Ohio Ry. Co. *v.* Kelly, 241 U. S. 495 (36 S. Ct. 630, 60 L. ed.
1117, L. R. A. 1917F, 367). It will be seen from an examina-
tion of the decision in that case that the question there involved
was whether or not the trial judge erred in failing to instruct the
jury that whatever gross amount of damages they found was sus-
tained by the plaintiff should be reduced to its present value.
The Supreme Court, in ruling that where a verdict is based upon
the deprivation of future benefits the ascertained amount of such
benefits should ordinarily be discounted so as to make the verdict
equivalent to their present value, went further in the opinion to
discuss the proper method of so doing, and it was in this discus-
sion as set forth in the opinion in that case, as delivered by Mr.
Justice Pitney, that the following language was used: "We are
constrained to say that in our opinion the Court of Appeals erred
in its conclusion upon this point. The damages should be equiv-
alent to compensation for the deprivation of the reasonable ex-
pectancy of pecuniary benefits that would have resulted from the
continued life of the deceased. . . So far as a verdict is based
upon the deprivation of future benefits, it will afford more than
compensation if it be made up by aggregating the benefits with-
out taking account of the earning power of the money that is
presently to be awarded. It is self-evident that a given sum of
money in hand is worth more than the like sum of money payable
in the future. Ordinarily a person seeking to recover damages
for the wrongful act of another must do that which a reasonable
man would do under the circumstances, to limit the amount of

the damages. . . And the putting out of money at interest is at this day so common a matter that ordinarily it can not be excluded from consideration in determining the present equivalent of future payments, since a reasonable man, even from selfish motives, would probably gain some money by way of interest upon the money recovered. Savings banks and other established financial institutions are in many cases accessible for the deposit of moderate sums at interest, without substantial danger of loss; the sale of annuities is not unknown; and, for larger sums, State and municipal bonds and other securities of almost equal standing are commonly available. Local conditions are not to be disregarded, and besides, there may be cases where the anticipated pecuniary advantage of which the beneficiary has been deprived covers an expectancy so short and is in the aggregate so small that a reasonable man could not be expected to make an investment or purchase an annuity with the proceeds of the judgment. But, as a rule, and in all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award. We do not mean to say that the discount should be at what is commonly called the 'legal rate' of interest; that is, the rate limited by law, beyond which interest is prohibited. It may be that such rates are not obtainable upon investments on safe securities, at least without the exercise of financial experience and skill in the administration of the fund; and it is evident that the compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill, for where this is necessarily employed the interest return is in part earned by the investor rather than by the investment. This, however, is a matter that ordinarily may be adjusted by scaling the rate of interest to be adopted in computing the present value of the future benefits; it being a matter of common knowledge that, as a rule, the best and safest investments, and those which require the least care, yield only a moderate return."

As has already been indicated in the syllabus, the decisions of the Federal courts are binding on questions of construction arising under the Federal employer's liability act. It is contended, however, that the language of the decision relied upon by the defendant in error as supporting the charge is merely obiter, and

for that reason not binding, since the question for determination was not how the gross sum should be reduced to its present worth, but whether or not it should be so reduced. Construing merely the language referred to, there might be some difficulty in determining whether or not it constitutes a part of the ruling or is mere obiter, since the court in passing upon the question of whether or not there should be a reduction to present value, might by this language have intended to define what it meant in saying that the gross amount should be reduced to its present value. Under such a view, it might well be said that the language thus employed could be taken as a part of the adjudication. The difficulty is relieved, however, by a further statement in the opinion, expressly disclaiming such an intent. This language is as follows: "We are not in this case called upon to lay down a precise rule or formula, and it is not our purpose to do this, but merely to indicate some of the considerations that support the view we have expressed that, in computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made upon the basis of their present value only." It follows, therefore, that we have no absolute ruling by the Supreme Court upon the question here involved, but the language thus employed by one of the ablest jurists of the day must be taken as persuasive authority only.

It is manifest that in a suit of this character it would be entirely beyond the mark to enter upon the question of what financial experience and skill, if any, the particular plaintiff might possess. Evidence upon that question would not be admissible. Some general rule must be adopted. To require that the plaintiff should earn the highest legal rate of interest not actually prohibited by law would not result in eliminating from consideration the degree of financial experience and skill possessed by the plaintiff, but would be to assume, as a matter of law, that the plaintiff did possess the highest degree of financial experience and skill; on the other hand, to require that the plaintiff should earn only such interest as the fund might be made to produce without the exercise of any degree of financial experience and skill would not re-

sult in eliminating from consideration the degree of financial experience and skill possessed by the plaintiff, but would be to assume, as a matter of law, that the plaintiff possessed no degree of financial experience and skill whatever. As stated in the opinion referred to, the theory on which it is required that the amount of the damages sustained should be reduced in the award to its present cash value is that "a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damage." This principle is recognized and embodied in section 4398 of our Civil Code, which provides that "Where by a breach of contract or negligence one is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence." It thus might seem that in order to eliminate the personality of the plaintiff in determining the amount of the damages when considered in connection with the duty to reduce the award to its present cash value, the sum awarded should be made to that fictitious person known only to the law, who is assumed to be a reasonable man exercising ordinary care and diligence. It will be observed that no exception is taken to the failure of the judge to require ordinary care and diligence in the management of the fund awarded, but the only exception actually taken to the charge as made is that it was erroneous in that under it "no financial skill would be required." We do not think this ground of exception is well taken. The excerpt from the charge complained of does not prescribe any such limitation; its only import being that the compensation should not be awarded upon a basis that calls for such financial experience and skill as would result in obtaining interest at the recognized legal rate, the precise excerpt excepted to being as follows: "It may be that such rates are not obtainable upon investments upon safe securities without the exercise of financial experience and skill. The compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise *such* skill." (Italics ours.) It is manifestly not erroneous to charge that the plaintiff is not required to obtain the legal rate. Indeed it has been expressly adjudicated by the United States Supreme Court that a charge imposing such a duty would be erroneous. L. & N. R. Co. *v.* Holloway, 246 U. S. 525 (38 S. Ct. 379, 62 L. ed. 867). Since, therefore, the charge complained

of was not erroneous in itself, and no ground of complaint is made upon the failure to charge the rule as to ordinary care, the exception as taken is without merit, even were it to be assumed that the rule of ordinary care be the true and correct one. Upon that question, however, we are not here called upon to pass.

8. The evidence supported the verdict. The charge was clear, full, and fair; and for no reason assigned can the verdict be disturbed.

         *Judgment affirmed. Stephens and Bell, JJ., concur.*